## Samuel H. Irvin's Appeal.

Under the acts of June 16, 1836, and April 20, 1846, a mere naked allegation in the affidavit of a junior judgment creditor, on information and belief, and unsupported by evidence (that a prior judgment was, without consideration, fraudulently and collusively confessed for the purpose of hindering and defrauding such junior judgment creditor, or for a larger sum than was due, or for a debt that has been paid) is insufficient to justify the court in awarding an issue to try the validity of the judgment attacked.

(Argued May 27, 1887. Decided October 3, 1887.)

July Term, 1887, No. 44, E. D., before GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Appeal from a decree of the Common Pleas of Huntingdon County discharging rules for

Cited in Baldwin v. Horron, 19 Pa. Co. Ct. 634, 636, and Poley v. Lally, 5 Kulp, 201, 202.

NOTE.—Provision was made by the act of July 9, 1897, P. L. 237, for the granting of a rule to set aside an alleged fraudulent judgment, after execution issued, on an allegation by any creditor that he has reason to believe that the judgment is invalid and fraudulent, and that he expects to be able to establish such fact at the hearing of said rule. This act was intended to give a general creditor the same standing as if he were a lien creditor. Page v. Williamsport Suspender Co. 191 Pa. 511, 43 Atl. 345.

For the awarding of an issue by the court under the acts of 1836 and 1846, see People's Sav. Bank v. Mosier, 199 Pa. 375, 49 Atl. 132; Moore v. Dunn, 147 Pa. 359, 23 Atl. 596; Baldwin v. Horron, 19 Pa. Co. Ct. 634; Atherholt v. Atherholt, 7 Pa. Super. Ct. 82, 42 W. N. C. 70; Wile Bros. v. Locks, 9 Pa. Super. Ct. 193, 43 W N. C. 424.

feigned issues to try the validity of certain confessed judgments and confirming the report of an auditor to distribute the proceeds of a sheriff's sale of real estate in execution. Affirmed.

The facts as they appeared from the record and before the auditor, D. Caldwell, Esq., are stated in the following opinion, delivered in the court below, by FURST, P. J.:

Exception is taken to the charge of the auditor for his services in these proceedings. His charge is $210. At first thought we were inclined to the view that the charge was excessive and should not be allowed. Upon further consideration of the case, we are convinced that the report of the auditor does not fully show all labor to which he was subjected. The case was before him for fully a year. There was a sharp contest between contested creditors. Various delays were necessitated by their action. An effort was made by certain creditors to compel the production of ——— papers and notes, not involved in this distribution, but relating to judgments held by Mary Mumper against Mumper and Mumper & Co., which were satisfied by the sale of the personal estate. This contest the auditor brought before the court, upon his own petition for direction in the premises. The result was the court ordered the production before the auditor of all papers and single bills relating to any judgment which could take, or which by any possibility could take, into the distribution of the funds in court, but made no orders as to those which did not relate to this distribution, and which were not claimed by Mrs. Mumper or her assignees as a lien upon the fund. The audit then proceeded. Many adjournments were forced upon the auditor, none of which were at his instance. Finally the contesting creditors presented a bill in equity against Mary A. Mumper *et al.;* and an injunction was issued by the court restraining the auditor from proceeding further. This in due time, upon hearing by the court, was dissolved, and the auditor was directed to proceed. From this decree an appeal was taken to the supreme court, which is still pending. Counsel for creditors applied to the auditor to suspend the audit until this appeal was disposed of, thereby creating considerable delay and trouble to the auditor.

We have ascertained from all the evidence we could obtain from the report of the auditor and the testimony taken, as well as a statement furnished to us by the auditor that he necessarily

spent from eighteen to twenty days in the hearing of the case and disposing of all the questions raised before him and making out his report.

Under the act of June 4, 1879 (Purdon's Digest, p. 144, pl. 4), the compensation to be allowed auditors appointed by the court shall not exceed $10 per day, for each day necessarily engaged in the case, unless upon special cause shown, the court may increase it to $15 per day.

To meet and adjourn is not a day necessarily spent, within the meaning of this act. The act contemplates a reasonable service upon each day engaged in the case.

We have ascertained the number of days, without allowing a day for each meeting, and have come to the conclusion that allowing a certain number of days to cover the adjournments, not exceeding five or six, he was engaged the length of time already stated.

This exception is therefore not sustained.

We come now to consider the application before the auditor for issues to try the validity of said judgments, and the petition presented to the court upon the filing of his report, upon which rules were granted upon Mary A. Mumper and the Provident Life & Trust Company of Philadelphia, to show cause why said issues should not be awarded. These cases were all heard in connection with the exceptions to the auditor's report.

Mary A. Mumper obtained, by confession, a judgment in the court of common pleas, to No. 82, April term, 1883, against John W. Mumper on April 12, 1883, for the sum of $20,951.86. This judgment was entered upon a bill signed dated February 13, 1883, for an indebtedness accruing prior to the partnership of John W. Mumper & Co., which partnership began in the year 1881.

She also obtained a judgment against John W. Mumper and H. L. Beltzhoover, trading as John W. Mumper & Co., upon a bill signed on April 25, 1883, for $9,764.50, to No. 129, April term, 1883.

Before the auditor two petitions were presented by the attorneys of certain creditors of John W. Mumper & Co., namely, Jones, Hoar & Co., H. H. Kline, Henry & Co., S. H. Irvin, and others, praying for issues to be directed by the court of common pleas to try the validity of these judgments.

Afterward a petition was presented to the court on behalf of

all the creditors asking for like issues, etc. These several petitions have the names of the creditors, signed by their several attorneys. They are attached to the auditor's report.

The material allegations of fact are contained in the petition presented to the court, and are set forth in three distinct divisions.

First, that petitioners believe that the aforesaid judgments were without consideration fraudulently and collusively confessed by and between the parties thereto, for the purpose of hindering, delaying, and defrauding the petitioners, etc.

Second, that judgment No. 82, April term, 1883, against John W. Mumper for $20,951.86, was fraudulently confessed for a larger sum than was due, etc.

Third, that if there was any consideration whatever for said judgment No. 82, or if John W. Mumper was, at the execution of the note, in any manner indebted to said Mary A. Mumper, such indebtedness petitioners are advised and believe was fully paid and satisfied prior to the sale of the real estate of John W. Mumper, etc.

This petition is verified by three of the creditors in the following manner, namely: "B. F. Isenberg, one of the members of the firm of Henry & Co., being duly sworn according to law, doth depose and say the facts set forth in the foregoing petition are true to the best of his knowledge, information, and belief."

Upon the filing of this petition in court a rule was granted to show cause why a feigned issue should not be awarded, etc. Thus a full opportunity was given to the petitioners to show to the court, by deposition or in any other proper manner, some fact or facts that were material and in dispute. They failed to show a single fact; and although the case was before the auditor for over a year, not a single fact was shown before him as to the fraudulent character of either of said judgments, or that the judgments were paid as alleged in the third paragraph of petition.

Upon the other hand it was shown, by the deposition of Mary A. Mumper and John W. Mumper, that the judgment for $20,-951.86 (the other judgment was not attacked at the same time the deposition was taken), was given for a good and bona fide consideration, which existed for more than a year prior to the formation of the partnership between John W. Mumper and H. L. Beltzhoover, the nature and character of the indebted-

ness being fully set forth, both in the depositions and in the answer referred to therein in the equity proceeding between these same parties. It was further shown that the Provident Life & Trust Company of Philadelphia, which corporation was the guardian of the minor son of Mary A. Mumper, and a part owner of the same real estate, had made a full investigation into the consideration of said judgment, and thereupon had advanced the money to purchase the real estate at the sheriff's sale, taking an assignment of this judgment as security, etc. According to the facts shown in the answer and depositions, none of these petitioners could have had any personal knowledge of the facts set forth in these several petitions.

This is also apparent from the manner in which the petitions are drawn. They are signed by the counsel for the petitioners. There is no allegation in any one of the petitions that any petitioner or creditor has knowledge of the facts therein stated. And this is also further apparent by the careful manner in which the affidavits are made, "upon information." So that these affidavits to the petition merely amount to hearsay, derived from others; the source of which information is withheld from the court by a refusal to produce the same in evidence upon the rule to show cause.

The question then is simply this: Do these petitions, in the manner in which they are verified, show a material fact in dispute, which should determine or influence the court to grant the issue? Section 87 of the act of June 16, 1836, Purdon's Digest, 763, pl. 117, provides: "If any fact connected with such distribution shall be in dispute, the court shall at the request in writing of any person interested direct an issue to try the same," etc. Under this act the law was mandatory, and the issue in this case would have to be granted; and to this effect are a number of decisions of the supreme court. Issues could be obtained upon the written request of an interested party, upon the allegation of a fact in dispute. The result was an endless variety of issues resulting in serious delays and expensive litigation.

To meet this, the act of April 20, 1846, was passed. The second section (Purdon's Digest, p. 763, pl. 118) provides as follows: "Provided, That before an issue shall be directed upon the distribution of money, arising from sales under execution, or orphans' court sales, the applicant for such issue shall make affidavit that there are material facts in dispute therein and

shall set forth the nature and character thereof; upon which affidavit the court shall determine whether such issue shall be granted, subject to a writ of error or appeal, by such applicant, if the issue be refused." Are the affidavits to these petitions made in accordance with the act of 1846, and do they of themselves afford sufficient evidence to the court of the existence of a material fact in dispute?

In Knight's Appeal, 19 Pa. 493, Chief Justice BLACK, delivering the opinion of the court, says: "A fact is properly said to be in dispute when it is alleged by one party and denied by the other, and by both with some show of reason. A mere naked allegation without evidence, or against the evidence, cannot create a dispute within the meaning of the law. If it could, a party might stop the distribution, whenever he chooses to make a groundless assertion. The court was right in refusing the issue."

In Robinson's Appeal, 36 Pa. 83, Justice WOODWARD says: "It is not enough for a creditor to swear that the judgment, which is in his way, was confessed by collusion between the parties thereto, and for the purpose of hindering and delaying certain other creditors; but he must set forth in his affidavit that there are material facts in dispute and also the nature and character of such facts. Even under the act of 1836 such an affidavit as we have upon record would have been insufficient. Dickerson's Appeal, 7 Pa. 258, and the cases therein cited. Much more is it insufficient under the act of 20th April, 1846, which, instead of granting the creditors an issue as matter of right, restricts it to the terms and conditions I have stated." Where material facts are stated positively and are shown to be within the parties' knowledge, stating them, and it is further shown that they are in dispute, it would then be the duty of the court, if they deemed them material, to award the issue. But when the party does not state facts within his own knowledge, but upon rumor or hearsay or information derived from others, we think before the court should arrest the distribution and grant the issue the evidence should be laid before the court, so that the court may have facts upon which to determine the propriety of granting or refusing the issue.

This principle is fully recognized in the authorities cited, and also in the case of Christophers v. Selden, 28 Pa. 165, and Dormer v. Brown, 72 Pa. 404.

The cases of Bichel v. Rank, 5 Watts, 140; Trimble's Appeal, 6 Watts, 133, and Reigart's Appeal, 7 Watts & S. 269, were all decided under the act of 1836, and therefore cannot affect the question under the act of 1846.

The practice indicated, of requiring the facts to be shown to the court before an issue is granted or refused, we think, has received the sanction of the supreme court in a number of recent cases, all of which show the wisdom of requiring this preliminary proof before subjecting parties or estates to tedious and expensive litigation. This practice obtains now in the orphans' court, under the several acts of assembly, which are quite as mandatory upon the court, if not more so, as the act of 1846.

By § 41 of the act of March 15, 1832, Purdon's Digest, p. 1476, pl. 20, "whenever a dispute upon a matter of fact arises before any register's (now orphans') court, the said court shall, at the request of either party, direct a precept for an issue to the court of common pleas of the county for the trial thereof in the form hereinbefore prescribed for the direction of register, changing such parts thereof as should be changed, . . . and the facts established by the verdict returned shall not be re-examined on any appeal."

In Harrison's Appeal, 100 Pa. 458, tried before Judge EL-WELL, whose able opinion was adopted as the opinion of the supreme court, referring to the section cited, the court says: "This section is imperative in its terms, and makes a request for an issue a matter of right in any case within its purview. Cozzens's Will, 61 Pa. 196, and Graham's Appeal, 61 Pa. 43; De Haven's Appeal, 75 Pa. 337."

The important question with which we have now to deal is, When, within the meaning of the statute, may a dispute be said to arise? Is it whenever facts are alleged by the contestant, and suggested upon the record; or is it when evidence has been given from which it appears that there is a conflict in the testimony, and a substantial dispute upon material facts?

By § 13 of the act in question the register is authorized to direct an issue when a person entering a caveat shall allow matter of fact touching the validity of a will.

Section 41 requires that a dispute in matter of fact shall have arisen before the court can be required to direct an issue.

Now, if nothing more was intended to be required, by the latter section, than a specification of facts alleged to be in dispute,

it is difficult to understand why the phraseology of the two sections is different. But if we consider that the register is not necessarily learned in the law, we may find satisfactory reason why he may send the case to the court upon an allegation of fact.

But the same course of reasoning does not apply to the court; and therefore the law requires that it must appear that a dispute has arisen before the case can be properly sent to a jury for trial. The construction of the act of 1832 was under consideration by the court soon after its passage. In 1845 Judge KING, sitting in the register's court in Philadelphia, in which the inquiry in regard to when a dispute may be said to arise, said: "The dispute as to facts must arise when the cause is on hearing before the court;" that is the time when the court is to judge whether there are truly any facts in dispute. What a party may call a disputed fact may, if the court proceeds, never appear in proof, or may be immaterial to the question before the court, etc. That case was an application to the court for an issue *devisavit vel non,* to test the validity of the will of Wm. Cameron. The request for the issue was first dismissed, upon the ground that it was premature and inadmissible. Afterwards voluminous testimony was taken; and the application was again made to Judge ELWELL for the issue, based upon the facts as proved before the examiner, who, upon full consideration thereof, refused to grant it.

The acts of assembly are so nearly alike in their requirements, as to the manner of granting the issue, and the grounds upon which the court should determine the propriety of either awarding or refusing it, that it seems to us that this case should settle the practice of establishing uniformity of procedure in both courts.

To the same effect is Schwilke's Appeal, 100 Pa. 628.

Applying these principles to the case under consideration, we have only an affidavit made upon information, which is vague, uncertain, and indefinite in the facts stated; it is not made in conformity with the act of 1846; it is not supported by a single fact or circumstance shown to the court, upon which we can form an intelligent conclusion as to whether there is a fact in dispute. Ample time has been given, both before the auditor to show payment of judgment, if such fact existed, and in court upon the rule to show cause to produce some evidence that facts exist which are material, involving the integrity of

the judgments. Nothing has been shown, and we are led to the conclusion that this application is based upon suspicion or mere allegation. At least we are furnished with no facts in dispute upon which we can judicially act. At the same time the parties opposing this issue have shown facts before the court which fully sustain the validity of the judgment and which in detail show the consideration thereof. Cross-interrogatories were filed and answered by both Mary A. Mumper and John W. Mumper, which in no manner impeach the integrity of this judgment. This testimony is not contradicted by any evidence in the cause. The only attack upon it is contained in allegations made upon information alone.

As to judgment No. 129, April term, 1883, before the auditor, no claim was made; according to the evidence submitted to us, the lien of this judgment was released as to all the money in court, and also as to any real estate in Huntingdon county, upon which contesting creditors had liens. This judgment, therefore, does not in any manner stand in the way of petitioners.

For the reasons given, the exceptions to the auditor's report are overruled and the report confirmed; and the rules for feigned issues are discharged, and issues refused.

The assignments of error specified the action of the court in entering this decree.

The paper book of the appellant did not contain the evidence taken on the rules for issues.

*Myton & Schock, Petrikin & McNeil,* and *Stevens & Owens,* for appellant.—Under the acts of June 16, 1836 (P. L. p. 777, § 87) and April 20, 1846 (P. L. p. 411, § 2), an issue to try disputed facts is a matter of right, upon the appellant complying with their several requirements; *i. e.,* by setting forth in an affidavit that there are material facts in dispute with the nature and character of the same. Souder's Appeal, 57 Pa. 503; De Haven's Appeal, 75 Pa. 341.

Such issues are not to inform the conscience of the court; but are of right to try matters of fact. Dormer v. Brown, 72 Pa. 404.

The appellant in this case was a party interested, being a judgment lien creditor, whose judgment would be paid if the facts in dispute are as he alleges; or if not as he alleges, then

his claim would be worthless. Robinson v. Vandiver, 2 Pearson (Pa.) 96.

A fact is something that was done, exists, or a circumstance in connection with the same, and which is susceptible of proof, and is said to be in dispute when it is alleged by one party and denied by the other, and by both with some show of reason. Knight's Appeal, 19 Pa. 494.

By proving the facts as alleged by the appellant to exist, the judgment of Mary A. Mumper for use of the Provident Life & Trust Company v. John W. Mumper for $20,951.86, and the judgment of Mary A. Mumper v. John W. Mumper and H. L. Beltzhoover for $9,764.50, would be wiped from the records and the judgment of appellant paid. They are therefore material facts.

In Benson's Appeal, 48 Pa. 159, a case almost parallel to one under argument, the petition filed by Benson for an issue set forth that there were material facts in dispute, the nature and character of which were that it was confessed for a much larger sum than was due. The court below refused the issue, for which it was convicted of error, saying: "We are not informed of the grounds upon which the issue was refused in the court below; and as the demand for it was in time, and the nature of the disputed facts explicitly enough set forth, material, if true, we think the court erred in refusing it. The act of assembly is quite imperative, as many decisions show, that the court, under such a statement of the case must grant an issue."

The trial by jury in cases like this is a constitutional right when the requirements of the act of assembly are complied with, and any departure from the mandatory requirements of the act by the court would be an attempt on the part of the court to usurp the powers of the legislature, by repealing statutes in place of enforcing the same. Battin v. Meyer, 5 Phila, 73.

The practice under the act of April 20, 1846, and the act of June 16, 1836, relating to the granting of issues is the same, except so far as the act of 1846 requires an affidavit.

It was the general practice under the act of 1836 for the attorneys for parties interested to make the application (sign it) for issues. Reigart's Appeal, 7 Watts & S. 267; Bichel v. Rank, 5 Watts, 140; Trimble's Appeal, 6 Watts, 133.

The petition and affidavit are but one paper, and should be so considered; and they contain every necessary statement and

averment.   Black v. Halstead, 39 Pa. 71; Stewart v. Fenner, 81 Pa. 180; Moeck v. Littell, 82 Pa. 356.

The learned court seeks to unify the practice in the common pleas court, under the acts of June 16, 1836, and April 20, 1846, in relation to the granting of issues, etc., with the practice of the orphans' court under the provisions of the act of March 15, 1832, in relation to the granting of issues; but it cannot be done.

The language, it shall "be lawful," in § 13 of act of April 15, 1832, is not mandatory upon the register.   It does not take from him the exercise of a sound legal discretion.   In the exercise of that discretion he may decide upon the matters of fact, or will direct the desired issue to the common pleas.   Cozzens's Will, 61 Pa. 196; Wickersham's Appeal, 75 Pa. 337; Schwilke's Appeal, 100 Pa. 630.

*R. M. Speer* and *George B. Orlady,* for the Provident Life & Trust Co., appellee.—The neglect of appellant to print the evidence taken on the rules to show cause, as required by rule XVII. of this court, is a sufficient reason to quash the writ and dismiss the appeal.   Graff v. Barrett, 29 Pa. 478; Aiken v. Stewart, 63 Pa. 30; McBeth v. Newlin, 15 W. N. C. 129; Smith v. Arsenal Bank, 104 Pa. 521; Joyce v. Lynch, 1 Sad. Rep. 275; Hyndman v. Hogsett, 111 Pa. 643, 4 Atl. 717.

The object of a paper book is to aid the court in arriving at the truth.   Allen v. Laird, 101 Pa. 70.

Whether it was error or not to refuse these issues depends upon the state of facts before the court on March 15, 1887, when these rules were argued.

On the part of the contesting creditors were offered the petitions for the issues, sworn to by three persons on information and belief to the best of their knowledge, stating:

1. That the two aforesaid judgments were without consideration.

2. That No. 82, April term, 1883, was confessed for a larger sum than was due.

3. That No. 82, April term, 1883, was fully paid and satisfied.

The absurdity of these statements is apparent at first glance. If No. 82, April term, 1883, was without consideration, how could it have been fully paid and satisfied, or confessed for a larger sum than was due?

Can it be intelligently urged that this is setting forth the nature and character of facts alleged to be in dispute?

Specific facts should be set out; it must appear that they may be made the subject of controversy as facts *in pais* proper to be passed on by a jury.

The act of assembly was not formed to enable a litigious party to demand an issue under all circumstances and then take his chances before a jury, when there is nothing in the case to call for its intervention. Dickerson's Appeal, 7 Pa. 258.

If there had been "positive evidence of fraud committed in relation to these judgments, within the knowledge of the appellant," as stated in his paper book, p. 43, or had these contesting creditors believed as they allege, that this judgment was without consideration, confessed for more than was due, fully paid and satisfied, or collusive and fraudulently confessed to hinder and delay creditors, and had they any evidence to support such belief, they would have adduced the evidence of it before the auditor, who had full and ample authority to enter into an investigation of the bona fides of the judgment, as decided in Meckley's Appeal, 102 Pa. 542.

As this judgment came in conflict with their claims as creditors they could have avoided it as to them by showing it was a nullity. McNaughton's Appeal, 101 Pa. 555.

By § 86 of the act of June 16, 1833 (Purdon's Digest, 763), the court has the power personally, where there are disputes concerning the distribution of money arising from executions, "to hear and determine the same according to law and equity." By § 87: "If any fact connected with such distribution shall be in dispute, the court shall, at the request in writing of any person interested, direct an issue to try the same," and by the succeeding act of April 20, 1846, § 2, provided: "That before an issue shall be directed . . . the applicant for such issue shall make affidavit that there are material facts in dispute therein, and shall set forth the nature and character thereof; upon which affidavit the court shall determine whether such issue shall be granted."

If the creditor may have an issue upon alleging his conclusions, instead of the facts, the statute is diverted from its purpose, and we shall have feigned issues to try legal conclusions, and abstract reasonings instead of facts. Collusion and fraud are facts when established; but they are not established by the

suspicion of parties, but by the judgment of law passing upon evidence which leads, necessarily, to these conclusions. Robinson's Appeal, 36 Pa. 84.

When a court of equity obtains rightful jurisdiction of a subject, it will comprehend within its grasp all incidental matters necessary to enable it to make a full and final determination of the whole controversy and thus to terminate litigation while it facilitates the remedy. McGowin v. Remington, 12 Pa. 56, 51 Am. Dec. 584.

The orphans' court, for many purposes, is clothed with equity powers. When the jurisdiction has attached over a fund, it comprehends within its grasp all powers necessary to make distribution. Williamson's Appeal, 94 Pa. 236.

With how much greater force does the principle apply, in the common pleas, which courts are granted power and jurisdiction specially for "the discovery of facts material to a just determination of issues and other questions arising or depending in the said court." 1 Purdon's Digest, p. 690, title, *Equity*, § 2, pl. 3.

Montgomery's Appeal, 3 Sad. Rep. 514, is decisive of this case.

PER CURIAM:

We affirm the decree in this case, for reasons stated in the well-considered opinion of the court below.

Decree affirmed, at costs of appellant.